COPY

FILED

CLERK, US DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
10 SEP -2 PM 4: 12
BY: ___

Scott A. Kamber
skamber@kamberlaw.com
David A. Stampley
dstampley@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone: (212) 920-3072
Facsimile: (212) 920-3081

Avi Kreitenberg (SBN 266571)
akreitenberg@kamberlaw.com
KamberLaw, LLP
1180 South Beverly Drive, Suite 601
Los Angeles, California 90035
Telephone: (310) 400-1050
Facsimile: (310) 400-1056

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA INTZEKOSTAS, an Individual, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FOX ENTERTAINMENT GROUP, a Delaware Corporation and CLEARSPRING TECHNOLOGIES, INC., a Delaware Corporation,<br><br>Defendants. | CASE NO. **CV10 6586** - RSW (SHx)<br><br>JURY DEMAND<br><br>COMPLAINT FOR:<br><br>1. Violation of Computer Fraud and Abuse Act, 18 U.S.C. §1030;<br><br>2. Violation of Computer Crime Law, Cal. Penal Code §502;<br><br>3. Violation of Invasion Of Privacy Act, Cal. Penal Code §630;<br><br>4. Violation of Consumer Legal Remedies Act, Cal. Civ. Code §1750;<br><br>5. Violation of Unfair Competition Law, Cal. Bus. and Prof. Code §17200;<br><br>6. Trespass to Personal Property/Chattel<br><br>7. Unjust Enrichment |

Class Action Complaint                          1

**CLASS ACTION COMPLAINT**

Plaintiff, Erica Intzekostas ("Plaintiff"), on behalf of herself and all other similarly situated individuals (each a "Class Member" of the putative "Class," as further described herein), by and through her attorneys, KamberLaw, LLP and KamberLaw, LLC, as and for her complaint and demanding trial by jury, alleges as follows based on her personal knowledge as to herself and her own acts and observations and, otherwise, upon information and belief based on the investigation of counsel, which Plaintiff believes further investigation and discovery will support with substantial evidence.

## I.   NATURE OF THE CASE

1.    Plaintiff and Class Members are consumers in the United States who use their desktop and laptop computers to access websites on Internet, and including users who configured their web browser privacy settings to deny permission for third parties to set browser cookies on their computers.

2.    Fox Digital, LLC ("Fox Digital") streams television programs and other video content to users. Clearspring Technologies, Inc. ("Clearspring") describes itself as a company that offers a platform that enables websites "to distribute and track digital content such as links, widgets, videos, and photos to social networks, bookmarking sites, blogs, and other web services." In fact, Clearspring is a company that tracks users and markets its ability to do so—and the data it collects. It enables advertisers and websites to use attractive, portable "widgets" to display on web pages that are designed to entice users to copy and distribute them, and which Clearspring uses to track every consumer that touches one of the widgets it distributes or manages.

3.    Together, Clearspring and Fox Digital ("Defendants") hacked the computers of millions of consumers' computers to plant rogue, cookie-like tracking code on users' computers. With this tracking code, Defendants circumvented users' browser controls for managing web privacy and security.

Class Action Complaint                    2

4.     Defendants perpetrated this exploit so they could monitor users, help themselves to users' personal information, and continue doing so for as long as Defendants' liked without ever having to ask or take a user's "no" for answer. In fact, users' "no" answers were the reason Defendants devised the scheme in the first place.

5.     The personal information Defendants misappropriated and compiled, with information from Clearspring's other web affiliations and data sources, included details about users' video viewing choices and personal characteristics such as gender, age, race, number of children, education level, geographic location, and household income. Defendants use the resulting profiles to identify individual users and track them on an ongoing basis, across numerous websites, even spotting and tracking users when they accessed the web from different computers, at home and at work.

## II.   JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7.     Venue is proper in this District under 28 U.S.C. § 1391(b) because defendant Fox Entertainment Group is a corporation headquartered in Los Angeles County, California.

8.     Venue is also proper in this District under 28 U.S.C. § 1391(b) because Defendants' improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district.

## III.   PARTIES

9.     Plaintiff Erica Intzekostas is a resident of the City and County of Philadelphia, Pennsylvania.

10.     Defendant Clearspring Technologies, Inc. ("Clearspring") is a Delaware corporation headquartered at 8000 Westpark Drive, Suite 625, McLean,

Class Action Complaint                    3

Virginia 22102. Clearspring does business throughout the United States and, in particular, in the State of California and Los Angeles County.

11.    Defendant Fox Entertainment Group, a Delaware corporation, is headquartered at 10201 West Pico Boulevard, Los Angeles, California 90035. It is a wholly owned subsidiary of News Corporation. Its business includes the development, production, and distribution of films and television programs, television broadcasting, and cable network programming. Through its Fox Digital Media division, it is the owner and operator of *www.americanidol.com*, the official website of the *American Idol* television program.

## IV.  STATEMENT OF FACTS

### A.    Background

12.    In 1994, in the first web browser[1] to allow for the exchange of cookie values[2] between a web server and user's computer, the browser, by default, accepted first-party websites'[3] cookies and rejected third-party cookies. "HTTP

_____

[1]    A browser is software installed on a user's personal computer . . . and with which the user, by communicating through an electronic network such as the Internet, can access Web sites.

*In the Matter of Netscape Communications Corporation*, Assurance of Discontinuance, Attorney General of the State of New York (June 13, 2003).

[2] A cookie is a small string of text transmitted to and from a user's computer in a communication between a server group and a particular instance of browser client software. For ease of reference in this complaint, this exchange is characterized a communication between a website and a user, or user's browser

[3]    "First-party Web site" is the Web site a User affirmatively requests to visit, for example, by typing in the site's URL or by clicking on a hyperlink to the site.

*In the Matter of DoubleClick Inc.: Agreement Between the Attys. Gen. of the States of Arizona, California, Connecticut, Massachusetts, Michigan, New*

(cont.)

Class Action Complaint                    4

Cookies: Standards, Privacy, and Politics," David M. Kristol, 2001, available at http://arxiv.org/abs/cs/0105018 (last accessed June 22, 2010) at 9-10. Third-party cookie transactions were considered "unverifiable transactions" and a threat to users' privacy and security; users had no way of knowing in advance whether third parties might be setting cookies on their computers, for what reason, and who the third parties were. The default configuration—rejection of third-party cookies—was retained when, in 2000, the Internet Engineering Task Force (IETF) finalized the global standard for web servers and browsers to follow in exchanging cookies. *See* "RFC 2965, HTTP State Management Mechanism" [Kristol and Montulli 2000], Internet Engineering Task Force, Oct. 7, 2000, available at http://www.ietf.org/rfc/rfc2695.txt.pdf (last accessed July 27, 2010).

13.     Nascent Internet advertising companies protested the standard. The leading commercial browser vendors, Microsoft and Netscape, declined to implement it. Kristol at 21.Thus, a *de facto* standard was propagated as browser vendors engaged in mass distribution of their software: if a first-party website—the site the user expressly chose to visit—chose to display a web page that included a third-party advertisement or use a third-party-provided traffic counter, the third party gained the ability to set cookies on users' computers with no notice to those users.

14.     This development cleared the way for third-party advertising companies to engage in widespread "network advertising." By assembling a client network of many websites, advertising companies could recognize, track, and profile users activities across many websites. As early as 2001, DoubleClick was

_____

*Jersey, New Mexico, New York, Vermont, and Washington and DoubleClick Inc.,* Aug. 26, 2002 at 2, available at http://www.ag.ny.gov/media_center/2002/aug/-aug26a_02_attach.pdf (last accessed July 29, 2010).

Class Action Complaint                    5

delivering ads on a network of over 11,000 websites. *In re DoubleClick Inc. Privacy Litigation*, 154 F.Supp.2d 497, 500 (S.D.N.Y. 2001). By 2009, Google, which acquired DoubleClick, was serving ads on a network of millions of websites. Google Inc., SEC Form 10-K for period ending Dec. 31, 2009 at 9. In 2009, advertising accounted for 97 percent of Google's $24 billion revenue in 2009. *Id.* at 19.

15. At the same time, it became more important to commercial entities to be able to measure advertising activity and user traffic.

16. Meanwhile, browser vendors—grudgingly—and other companies have distributed software tools that offer users some measure of third-party cookie control. For example, users can accept or refuse to accept all or certain third-party cookies or to automatically delete them at intervals of users' choosing. These software tools—like other software owned or licensed by users, such as Adobe Flash Player—are under the authority and control of those users.

17. One reason users employ tools to manage and delete cookies is distaste for being profiled. According to PreferenceCentral, an online ad preference management provider, 58 percent of U.S. Internet users expressed willingness to receive behaviorally targeted ads in exchange for free content. However, when told how behavioral targeting works, the number of willing users dropped to below 38 percent, and 50 percent of users stated they would elect to receive a more limited selection of free content and untargeted advertisements. "Consumer Perspectives on Online Advertising 2010," PreferenceCentral, July 7, 2010, available at http://www.preferencecentral.com/consumersurvey/results/behavioral-targeting/ (last accessed July 28, 2010).

**B.    Clearspring's Conduct**

18. User control over third-party cookies has created challenges for advertisers and online ad networks, as well as Internet metrics companies such as Clearspring, that attempt to track and profile users over time and/or across multi-

Class Action Complaint            6

ple websites. For online companies that rely on cookies to track users and measure user activity, cookie deletion skews the numbers.

19.     Clearspring, however, identified a way to work with its website affiliates to wrest control of browser cookies from users by installing, on users' computers, a tracking device that users could not easily detect, manage, or delete. In cooperation with websites, Clearspring planted its own tracking code on users' computers—but not in a cookie. Clearspring and participating websites, including Fox Digital's *www.americanidol.com* website, stored tracking code as an Adobe Flash Media Player local shared object (LSO). Adobe Flash Media Player is software that enables users to view video content on their computers. Clearspring then merged the tracking results with information from other sources to arrive at metrics for the site. Clearspring's vehicle for distributing this tracking was through its deals to process data from widgets on websites such as americanidol.com.

20.     In addition, the model used by Defendants included the placement of Clearspring "widgets" on web pages—attractive web objects—which Fox Digital encouraged its visitors to send to their friends and post on their social network pages, thus propagated Defendants' tracking ability to other websites visited by their users, and onward to encompass the web navigation of their users' friends.

21.     Clearspring's perpetration of this exploit was independently confirmed in a report issued by academic researchers and titled, "Flash Cookies and Privacy," which found that:

a.      A user visiting a website would receive a standard, browser cookie, and an identical, Clearspring "Flash cookie."

b.      If the user deleted the browser cookie, the Flash cookie would be used to "re-spawn" the browser cookie.

       c.     These operations happened without any notice to the user and without any consent from the user.

       d.     In addition, both the browser cookie and the Flash cookie set by Clearspring would contain a common user identifier.

"Flash Cookies and Privacy," A. Soltani, S. Canty, Q. Mayo, L. Thomas, C.J. Hoofnagle, Univ. Cal., Berkeley, Aug. 10, 2009 at 3, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1446862 (last accessed July 28, 2010).

22.     In a letter to the Federal Trade Commission earlier this year, Adobe Systems Incorporated condemned the use of LSOs to back-up and re-spawn browser cookies without express user consent. Letter to FTC, Adobe Systems Inc., Jan. 27, 2010, available at http://www.ftc.gov/os/comments/privacy-roundtable/544506-00085.pdf (last accessed July 27, 2010).

23.     Clearspring claims to now utilize an HTML (non-Flash)-based distribution model, but its new model allows widgets to be embedded and operate as before.

**C.    Plaintiff's Experience**

24.     On or about late February 2010, Plaintiff visited Fox Digital's website at http://www.americanidol.com

25.     Subsequently, Plaintiff examined the contents of the local storage associated with the Adobe Flash Player application on her computer. She observed that the objects in local storage included two Flash cookies, one set by "www.americanidol.com" and the other set by "bin.clearspring.com," both of which were modified on the same date at the same hour and minute. It is Plaintiff's belief that one or more of these objects is a tracking device used by Fox Digital and Clearspring, without authorization, to monitor and profile her Internet activities.

26.     Plaintiff did not receive notice of the installation of such a device, did not consent to the installation of such a device, and did not want such a device to be installed on her computer.

27.     The Privacy Policy and the Terms and Conditions of Use on the American Idol website do not disclose its use of such devices.

28.     Plaintiff believes that, if she were to visit the American Idol site again, the tracking device would be used as a substitute cookie or to re-spawn previously set cookies.

29.     Plaintiff considers information about her online activities to be in the nature of confidential, trade secret information that she protects from disclosure, including by periodically deleting cookies.

30.     Plaintiff's experience is typical of the experiences of Class Members.

**D.     User Consequences**

31.     Defendants manipulated their "Flash cookies" in storage areas of Plaintiff's and Class Members' computers, which were computers used in and affecting interstate commerce and communication and were therefore protected computers as defined in the Computer Fraud and Abuse Act, Title 18, United States Code, Section 1030(e)(2).

32.     Defendants' actions were surreptitious and without notice and so were conducted without authorization and exceeding authorization.

33.     Plaintiff and Class Members sought to maintain the secrecy and confidentiality of their personal information assets acquired by Defendants

34.     Defendants' conduct has caused economic loss to Plaintiff and Class Members in that their personal information has discernable value, both to defendants and to Plaintiff and Class Members, of which Defendants have deprived Plaintiff and Class Members and, in addition, retained and used for their own economic benefit.

Class Action Complaint                          9

35.     The aggregated loss and damage sustained by Subscribers set forth above includes economic loss with an aggregated value of at least $5,000 during a one-year period.

36.     Defendants perpetrated the acts and omissions set forth in this complaint through an organized campaign of deployment, which constituted a single act.

37.     The means by which Defendants obtained such information, and the reasons Clearspring engaged in its campaign (to circumvent user deletion of cookies) demonstrate the confidential character of such information and users' efforts to protect it.

## V.   CLASS ALLEGATIONS

38.     Pursuant to the Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), Plaintiff brings this action as a class action on behalf of herself and all others similarly situated as members of the Class, defined as follows:

> All persons residing in the United States that accessed the www.americanidol.com website and a Clearspring Technologies, Inc. Flash cookie was set on their computer to use its local storage within the Flash media player to back up browser cookies for the purposes of restoring them later.

39.     Excluded from the Class are Defendants, their legal representatives, assigns, and successors, and any entity in which a Defendant has a controlling interest. Also excluded is the judge to whom this case is assigned and the judge's immediate family.

40.     Plaintiff reserves the right to revise this definition of the Class based on facts learned in the course of litigation of this matter.

41.     The Class consists of millions of individuals and other entities, making joinder impractical.

42.     The claims of Plaintiff are typical of the claims of all other Class Members

43.     Plaintiff will fairly and adequately represent the interests of the other Class Members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of Class Members and have the financial resources to do so. Neither Plaintiff nor her counsel has any interests adverse to those of the other Class Members.

44.     Absent a class action, most Class Members would find the cost of litigating their claims to be prohibitive and will have no effective remedy.

45.     The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

46.     Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other Class Members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members.

47.     The factual and legal bases of Defendants' liability to Plaintiff and other Class Members are the same, resulting in injury to Plaintiff and all of the other Class Members. Plaintiff and the other Class Members have all suffered harm and damages as a result of Defendants' wrongful conduct.

48.     There are many questions of law and fact common to Plaintiff and the Class Members and those questions predominate over any questions that may affect individual Class Members. Common questions for the Class include, but are not limited to the following, regarding Defendants' conduct described herein:

a.      whether Defendants, without authorization, created and/or manipulated Adobe Flash Player local stored objects on computers to which Class Members' enjoyed rights of possession superior to those of Defendants;

b.      for what purposes Defendants created and/or manipulated Adobe Flash Player local stored objects on Class Members' computers;

c.      whether Defendants violated:

      i.      the Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

      ii.     the California Uniform Trade Secrets Act, Civil Code § 3426;

      iii.    the California Computer Crime Law, Penal Code § 502;

      iv.     the California Unfair Competition Law, Business and Professions Code § 17200;

      v.      the California Consumer Legal Remedies Act, Civil Code § 1750; and

d.      whether Defendants misappropriated valuable information assets of Class Members;

e.      whether Defendants continue to retain valuable information assets from and about Class Members;

f.      what uses of such information were exercised and continue to be exercised by Defendants; and

g.      whether Defendants have been unjustly enriched.

49.     The questions of law and fact common to Class Members predominate over any questions affecting only individual members, and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

**COUNT I**
**Violation of the Computer Fraud and Abuse Act**
**18 U.S.C.  § 1030 *et seq.***
**Against All Defendants**

Class Action Complaint                    12

50.     Plaintiff incorporates the above allegations by reference as if set forth herein at length.

51.     The Computer Fraud and Abuse Act, 18 U.S.C. § 1030, referred to as "CFAA," regulates fraud and relates activity in connection with computers, and makes it unlawful to intentionally access a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, thereby obtaining information from such a protected computer, within the meaning of U.S.C. § 1030(a)(2)(C).

52.     Defendants violated 18 U.S.C. § 1030 by intentionally accessing a Plaintiff's and Class Members' computer,s without authorization or by exceeding access, thereby obtaining information from such a protected computer.

53.     The Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g), provides a civil cause of action to "any person who suffers damage or loss by reason of a violation" of CFAA.

54.     The Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A)(i), makes it unlawful to "knowingly cause[s] the transmission of a program, infor- mation, code, or command and as a result of such conduct, intentionally cause[s] damage without authorization, to a protected computer," of a loss to one or more persons during any one-year period aggregating at least $5,000 in value.

55.     Plaintiff's computer is a "protected computer...which is used in in- terstate commerce and/or communication" within the meaning of 18 U.S.C. § 1030(e)(2)(B).

56.     Defendants violated 18 U.S.C. § 1030(a)(2)(C) by intentionally ac- cessing a Plaintiff's computer, without authorization or by exceeding access, thereby obtaining information from such a protected computer.

57.     Defendants violated 18 U.S.C. § 1030(a)(5)(A)(i) by knowingly causing the transmission of a command embedded within their webpages, down- loaded to Plaintiff's computer, which are protected computers as defined in 18

U.S.C. § 1030(e)(2)(B). By accessing, collecting, and transmitting Plaintiff's viewing habits, Defendants intentionally caused damage without authorization to those Plaintiff's Class Members' computers by impairing the integrity of the computer.

58.     Defendants violated 18 U.S.C. § 1030(a)(5)(A)(ii) by intentionally accessing Plaintiff's and Class Members' protected computers without authorization, and as a result of such conduct, recklessly caused damage to Plaintiff's and Class Members' computers by impairing the integrity of data and/or system and/or information.

59.     Defendants violated 18 U.S.C. § 1030(a)(5)(A)(iii) by intentionally accessing Plaintiff's and Class Members' protected computers without authorization, and as a result of such conduct, caused damage  and loss to Plaintiff and Class Members.

60.     Plaintiff and Class  has suffered damage by reason of these violations, as defined in 18 U.S.C. § 1030(e)(8), by the "impairment to the integrity or availability of data, a program, a system or information."

61.     Plaintiff and Class Members have suffered loss by reason of these violations, as defined in 18 U.S.C. § 1030(e)(11), by the "reasonable cost ... including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."

62.     Plaintiff and Class Members have suffered loss by reason of these violations, including, without limitation, violation of the right of privacy, disclosure of personal indentifying information, sensitive identifying information, and personal information, interception, and transactional information that otherwise is private, confidential, and not of public record.

63.     As a result of these takings, Defendants' conduct has caused a loss

Class Action Complaint                    14

1    to one or more persons during any one-year period aggregating at least $5,000 in

2    value in real economic damages.

3        64.    Plaintiff and Class Members have additionally suffered loss by rea-

4    son of these violations, including, without limitation, violation of the right of pri-

5    vacy.

6        65.    Defendants' unlawful access to Plaintiff's and Class Members'

7    computers and electronic communications has caused Plaintiff and Class Mem-

8    bers irreparable injury.  Unless restrained and enjoined, Defendants will continue

9    to commit such acts.  Plaintiff's and Class Members remedy at law is not ade-

10   quate to compensate it for these inflicted and threatened injuries, entitling Plain-

11   tiff and Class Members to remedies including injunctive relief as provided by 18

12   U.S.C.  § 1030(g).

### Count II
### Violation of California's Computer Crime Law ("CCCL")
### California Penal Code § 502
### Against All Defendants

16       66.    Plaintiff incorporate the above allegations by reference as if set forth

17   herein at length.

18       67.    Plaintiff asserts this claim against each and every Defendant named

19   herein in this complaint on behalf of themselves and the Class.

20       68.    The California Computer Crime Law, California Penal Code § 502,

21   referred to as "CCCL" regulates "tampering, interference, damage, and unauthor-

22   ized access to lawfully created computer data and computer systems."

23       69.    Defendants violated California Penal Code § 502 by knowingly ac-

24   cessing, copying, using, made use of, interfering, and/or altering, data belonging

25   to Plaintiff and Class Members: (1) in and from the State of California; (2) in the

26   home states of the Plaintiff and Class Members; and (3) in the state in which the

27   servers that provided the communication link between Plaintiff and Class Mem-

28   bers and the websites they interacted with were located.

---

Class Action Complaint                    15

70.     Pursuant to California Penal Code § 502(b)(1),  "Access means to gain entry to, instruct, or communicate with the logical, arithmetical, or memory function resources of a computer, computer system, or computer network."

71.     Pursuant to California Penal Code § 502(b)(6),  "Data means a representation of information, knowledge, facts, concepts, computer software, computer programs or instructions. Data may be in any form, in storage media, or as stored in the memory of the computer or in transit or presented on a display device."

72.     Pursuant to California Penal Code § 502(b)(8), "Injury means any alteration, deletion, damage, or destruction of a computer system, computer network, computer program, or data caused by the access, or the denial of access to legitimate users of a computer system, network, or program."

73.     Pursuant to California Penal Code § 502(b)(10)  a "Computer contaminant means any set of computer instructions that are designed to modify, damage, destroy, record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information. They include, but are not limited to, a group of computer instructions commonly called viruses or worms, that are self-replicating or self-propagating and are designed to contaminate other computer programs or computer data, consume computer resources, modify, destroy, record, or transmit data, or in some other fashion usurp the normal operation of the computer, computer system, or computer network."

74.     Defendants have violated California Penal Code § 502(c)(1) by knowingly accessing and without permission, altering, and making use of data from Plaintiff's computers in order to device and execute business practices to deceive Plaintiff and Class Members into surrendering private electronic communications and activities for Defendants' financial gain, and to wrongfully obtain valuable private data from Plaintiff.

75.     Defendants have violated California Penal Code § 502(c)(2) by knowingly accessing and without permission, taking, or making use of data from Plaintiff's computers.

76.     Defendants have violated California Penal Code § 502(c)(3) by knowingly and without permission, using and causing to be used Plaintiff's computer services.

77.     Defendants have violated California Penal Code § 502(c)(4) by knowingly accessing and without permission, adding and/or altering the data from Plaintiff's computers.

78.     Defendants have violated California Penal Code § 502(c)(5) by knowingly and without permission, disrupting or causing the disruption of Plaintiff's computer services or denying or causing the denial of computer services to Plaintiff.

79.     Defendants have violated California Penal Code § 502(c)(6) by knowingly and without permission providing, or assisting in providing, a means of accessing Plaintiff's computers, computer system, and/or computer network.

80.     Defendants have violated California Penal Code § 502(c)(7) by knowingly and without permission accessing, or causing to be accessed, Plaintiff's computer, computer system, and/or computer network.

81.     Defendants have violated California Penal Code § 502(c)(8) by knowingly introducing a computer contaminant into the Plaintiff's computer, computer system and/or computer network to obtain data regarding Plaintiff's electronic communications.

82.     California Penal Code § 502(j) states: "For purposes of bringing a civil or a criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction."

83.     Plaintiff and Class Members have also suffered irreparable injury from these unauthorized acts of disclosure, to wit:  all of their personal, private, and sensitive electronic communications have been harvested, viewed, accessed, stored, and used by Defendants, and have not been destroyed, and due to the continuing threat of such injury, have no adequate remedy at law, entitling Plaintiff and Class Members to injunctive relief.

84.     Plaintiff and Class Members have additionally suffered loss by reason of these violations, including, without limitation, violation of the right of privacy.

85.     As a direct and proximate result of Defendants' unlawful conduct within the meaning of California Penal Code § 502, Defendants have caused loss to Plaintiff and Class Members in an amount to be proven at trial.  Plaintiff and Class Members are also entitled to recover their reasonable attorneys' fees pursuant to California Penal Code § 502(e).

86.     Plaintiff and the Class Members seek compensatory damages, in an amount to be proven at trial, and injunctive or other equitable relief.

87.     Plaintiff and Class Members have suffered irreparable and incalculable harm and injuries from Defendants' violations. The harm will continue unless Defendants are enjoined from further violations of this section. Plaintiff and Class Members have no adequate remedy at law.

88.     Plaintiff and the Class Members are entitled to punitive or exemplary damages pursuant to Cal. Penal Code § 502(e)(4) because Defendants' violation were willful and, on information and belief, Defendants are guilty of oppression, fraud, or malice as defined in Cal. Civil Code § 3294.

89.     Defendants' unlawful access to Plaintiff's and Class Members' computers and electronic communications has caused them irreparable injury. Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiff's and Class Members' remedy at law is not adequate to compensate it

Class Action Complaint                 18

1    for these inflicted and threatened injuries, entitling Plaintiff and Class Members

2    to remedies including injunctive relief as provided by California Penal Code §

3    502(e).

### Count III
### Violation of the California Invasion of Privacy Act
### Penal Code section 630 et seq.
### Against Fox Entertainment

7    90.    Plaintiff incorporate the above allegations by reference as if set forth

8    herein at length.

9    91.    Plaintiff assert this claim against each and every California Defend-

10   ants named herein in this complaint on behalf of themselves and the Class.

11   92.    California Penal Code section 630 provides, in part:

Any person who, . . . or who willfully and without the consent of all
parties to the communication, or in any unauthorized manner, reads,
or attempts to read, or to learn the contents or meaning of any
message, report, or communication while the same is in transit or
passing over any wire, line, or cable, or is being sent from, or
received at any place within this state; or who uses, or attempts to
use, in any manner, or for any purpose, or to communicate in any
way, any information so obtained, or who aids, agrees with,
employs, or conspires with any person or persons to unlawfully do,
or permit, or cause to be done any of the acts or things mentioned
above in this section, is punishable . . .

17   93.    On information and belief, each Plaintiff and each Class Member,

18   during one or more of their interactions on the Internet during the Class period,

19   communicated with one or more web entities based in California, or with one or

20   more entities whose servers were located in California.

21   94.    Communications from the California web-based entities to Plaintiff

22   and Class Members were sent from California.  Communications to the Califor-

23   nia web-based entities from Plaintiff and Class Members were sent to California.

24   95.    Plaintiff and Class Members did not consent to any of the Defend-

25   ants' actions in intercepting, reading, and/or learning the contents of their com-

26   munications with such California-based entities.

27   96.    Plaintiff and Class Members did not consent to any of the Defend-

28

---

Class Action Complaint                        19

ants' actions in using the contents of their communications with such California-based entities.

97.     Defendants are not a "public utility engaged in the business of providing communications services and facilities . . ."

98.     The actions alleged herein by the Defendants were not undertaken: "for the purpose of construction, maintenance, conduct or operation of the services and facilities of the public utility."

99.     The actions alleged herein by the Defendants were not undertaken in connection with: "the use of any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of a public utility."

100.    The actions alleged herein by the Defendants were not undertaken with respect to any telephonic communication system used for communication exclusively within a state, county, city and county, or city correctional facility.

101.    The Defendants directly participated in the interception, reading, and/or learning the contents of the communications between Plaintiff, Class Members and California-based web entities.

102.     Alternatively, and of equal violation of the California Invasion of Privacy Act, the Defendants aided, agreed with, and/or conspired with Clearspring to unlawfully do, or permit, or cause to be done all of the acts complained of herein.

103.    Plaintiff and Class Members have additionally suffered loss by reason of these violations, including, without limitation, violation of the right of privacy.

104.    Unless restrained and enjoined, Defendants will continue to commit such acts.  Pursuant to Section 637.2 of the California Penal Code, Plaintiff and the Class have been injured by the violations of California Penal Code section 631.  Wherefore, Plaintiff, on behalf of themselves and on behalf of a similarly situated Class of consumers, seek damages and injunctive relief.

Class Action Complaint                    20

**COUNT IV**
**Violations of the Consumer Legal Remedies Act**
**("CLRA") California Civil Code § 1750, et seq.**
**Against All Defendants**

105.   Plaintiff incorporate the foregoing allegations as if fully set forth herein.

106.   In violation of Civil Code section 1750, et seq. (the "CLRA"), Defendants have engaged and is engaging in unfair and deceptive acts and practices in the course of transactions with Plaintiff, and such transactions are intended to and have resulted in the sales of services to consumers. Plaintiff and the Class Members are "consumers" as that term is used in the CLRA because they sought or acquired Defendants' good or services for personal, family, or household purposes. Defendants' past and ongoing acts and practices include but are not limited to:

    a) Defendants' representations that their services have characteristics, uses, and benefits that they do not have, in violation of Civil Code § 1770(a)(5);

    b) Defendants' representations that their services are of a particular standard, quality and grade but are of another standard quality and grade, in violation of Civil Codes § 1770(a)(7); and

    c) Defendants' advertisement of services with the intent not to sell those services as advertised, in violation of Civil Code § 1770(a)(9).

107.   Defendants' violations of Civil Code § 1770 have caused damage to Plaintiff and the other Class Members and threaten additional injury if the violations continue. This damage includes the losses set forth above.

108.   At this time, Plaintiff seeks only injunctive relief under this cause of action. Pursuant to California Civil Code, Section 1782, Plaintiff will notify Defendants in writing of the particular violations of Civil Code, Section 1770 and

demand that Defendants rectify the problems associated with their behavior de-tailed above, which acts and practices are in violation of Civil Code § 1770.

109. If Defendants fails to respond adequately to Plaintiff's above de-scribed demand within 30 days of Plaintiff's notice, pursuant to California Civil Code, Section 1782(b), Plaintiff will amend the complaint to request damages and other relief, as permitted by Civil Code, Section 1780.

**COUNT V**
**Violations of the Unfair Competition Law ("UCL") California**
**Business and Professions Code § 17200, et seq.**
**Against All Defendants**

110. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

111. In violation of California Business and Professions Code § 17200 et seq., Defendants' conduct in this regard is ongoing and includes, but is not lim-ited to, unfair, unlawful and fraudulent conduct.

112. By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of the UCL and, as a result, Plaintiff and the Class have suffered injury-in-fact and have lost money and/or property—specifically, personal information and/or registra-tion fees.

113. Defendants' business acts and practices are unlawful, in part, be-cause they violate California Business and Professions Code § 17500, et seq., which prohibits false advertising, in that they were untrue and misleading state-ments relating to Defendants' performance of services and with the intent to in-duce consumers to enter into obligations relating to such services, and regarding statements Defendants knew were false or by the exercise of reasonable care De-fendants should have known to be untrue and misleading.

114. Defendants' business acts and practices are also unlawful in that they violate the California Consumer Legal Remedies Act, California Civil

Code, Sections 1647, et seq., 1750, et seq., and 3344, California Penal Code, section 502, and Title 18, United States Code, Section 1030. Defendants are therefore in violation of the "unlawful" prong of the UCL.

115.   Defendants' business acts and practices are unfair because they cause harm and injury-in-fact to Plaintiff and Class Members and for which Defendants has no justification other than to increase, beyond what Defendants would have otherwise realized, their profit in fees from advertisers and their information assets through the acquisition of consumers' personal information. Defendants' conduct lacks reasonable and legitimate justification in that Defendants have benefited from such conduct and practices while Plaintiff and the Class Members have been misled as to the nature and integrity of Defendants' services and have, in fact, suffered material disadvantage regarding their interests in the privacy and confidentiality of their personal information. Defendants' conduct offends public policy in California tethered to the Consumer Legal Remedies Act, the state constitutional right of privacy, and California statutes recognizing the need for consumers to obtain material information that enables them to safeguard their own privacy interests, including California Civil Code, Section 1798.80.

116.   In addition, Defendants' modus operandi constitutes a sharp practice in that Defendants knew, or should have known, that consumers care about the status of personal information and email privacy but were unlikely to be aware of the manner in which Defendants failed to fulfill their commitments to respect consumers' privacy. Defendants are therefore in violation of the "unfair" prong of the UCL.

117.   Defendants' acts and practices were fraudulent within the meaning of the UCL because they are likely to mislead the members of the public to whom they were directed.

**Count VI**

Class Action Complaint                    23

**Trespass to Personal Property / Chattels**
**Against All Defendants**

118.  Plaintiff incorporates by reference and reallege all paragraphs previously alleged herein.

119.  The common law prohibits the intentional intermeddling with personal property, including a computer, in possession of another that results in the deprivation of the use of the personal property or impairment of the condition, quality, or usefulness of the personal property.

120.  By engaging in the acts alleged in this complaint without the authorization or consent of Plaintiff and Class Members, Defendants dispossessed Plaintiff and Class Members from use and/or access to their computers, or parts of them. Further, these acts impaired the use, value, and quality of Plaintiff's and Class Members' computers. Defendants' acts constituted an intentional interference with the use and enjoyment of the computers. By the acts described above, Defendants have repeatedly and persistently engaged in trespass to personal property in violation of the common law.

121.  Without Plaintiff's and Class Members' consent, or in excess of any consent given, Defendants knowingly and intentionally accessed Plaintiff's and Class Members' property, thereby intermeddling with Plaintiff's and Class Members' right to possession of the property and causing injury to Plaintiff and the members of the Class.

122.  Defendants engaged in deception and concealment in order to gain access to Plaintiff and Class Members' computers.

123.  Defendants undertook the following actions with respect to Plaintiff's and Class Members' computers:

        a) Defendants accessed and obtained control over the user's computer;

        b) Defendants caused the installation of a new code onto the hard

drive of the user's computer;

c) Defendants programmed the operation of its code to function and operate without notice or consent on the part of the owner of the computer, and outside of the control of the owner of the computer.

124.   All these acts described above were acts in excess of any authority any user granted when he or she visited the Clearspring Flash Cookie Affiliates' websites and none of these acts was in furtherance of users viewing the Clearspring Flash Cookie Affiliates websites. By engaging in deception and mis-representation, whatever authority or permission Plaintiff and Class Members may have granted to Clearspring Flash Cookie Affiliates was vitiated.

125.   Defendants' installation and operation of its program used, inter-fered, and/or intermeddled with Plaintiff's and Class Members' computer sys-tems. Such use, interference and/or intermeddling was without Class Members' consent or, in the alternative, in excess of Plaintiff's and Class Members' con-sent.

126.   Defendants' installation and operation of its program constitutes trespass, nuisance, and an interference with Class Members' chattels, to wit, their computers.

127.   Defendants' installation and operation of its program impaired the condition and value of Class Members' computers.

128.   Defendants trespass to chattels, nuisance, and interference caused real and substantial damage to Plaintiff and Class Members.

129.   As a direct and proximate result of Defendants' trespass to chattels, nuisance, interference, unauthorized access of and intermeddling with Plaintiff's and Class Members' property, Defendants has injured and impaired in the condi-tion and value of Class Members' computers, as follows:

Class Action Complaint                 25

a) By consuming the resources of and/or degrading the performance of Plaintiff's and Class Members' computers (including hard drive space, memory, processing cycles, and Internet connectivity);

b) By diminishing the use of, value, speed, capacity, and/or capabilities of Plaintiff's and Class Members' computers;

c) By devaluing, interfering with, and/or diminishing Plaintiff's and Class Members' possessory interest in their computers;

d) By altering and controlling the functioning of Plaintiff's and Class Members' computers;

e) By infringing on Plaintiff's and Class Members' right to exclude others from their computers;

f) By infringing on Plaintiff's and Class Members' right to determine, as owners of their computers, which programs should be installed and operating on their computers;

g) By compromising the integrity, security, and ownership of Class Members' computers; and

h) By forcing Plaintiff and Class Members' to expend money, time, and resources in order to remove the program installed on their computers without notice or consent.

## Count VII
## Unjust Enrichment

130.   Plaintiff incorporates the above allegations by reference as if set forth herein at length.

131.   A benefit has been conferred upon all defendants by Plaintiff and the Class. On information and belief, Defendants, directly or indirectly, have received and retain information regarding online communications and activity of Plaintiff, and Defendants have received and retain information regarding specific

purchase and transactional information that is otherwise private, confidential, and not of public record, and/or have received revenue from the provision of such information.

132. Defendants appreciate or have knowledge of said benefit.

133. Under principles of equity and good conscience, Defendants should not be permitted to retain the information and/or revenue which they acquired by virtue of their unlawful conduct. All funds, revenues, and benefits received by Defendants rightfully belong to Plaintiff and the Class, which Defendants have unjustly received as a result of its actions.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendants as follows:

1. Certify this case as a Class action on behalf of the Classes defined above, appoint Plaintiff as Class representatives, and appoint their counsel as Class counsel;

2. Declare that the actions of Clearspring and Clearspring Flash Cookie Affiliates, as set out above, violate the following:

     a. Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

     b. California's Computer Crime Law, Penal Code § 502;

     c. California's Invasion Of Privacy Act, California Penal Code § 630;

     d. California's Consumer Legal Remedies Act, Civil Code § 1750;

     e. California's Unfair Competition Law, Business and Professions Code § 17200;

     f. Trespass to Personal Property / Chattels;

     g. Unjust Enrichment

3. As applicable to the Classes mutatis mutandis, awarding injunctive

and equitable relief including, inter alia: (i) prohibiting Clearspring and Clearspring Flash Cookie Affiliates from engaging in the acts alleged above; (ii) requiring Clearspring and Clearspring Flash Cookie Affiliates to disgorge all of its ill-gotten gains to Plaintiff and the other Class Members, or to whomever the Court deems appropriate; (iii) requiring Clearspring and Clearspring Flash Cookie Affiliates to delete all data surreptitiously or otherwise collected through the acts alleged above; (iv) requiring Clearspring and Clearspring Flash Cookie Affiliates to provide Plaintiff and the other Class Members a means to easily and permanently decline any participation in any data collection activities; (v) awarding Plaintiff and Class Members full restitution of all benefits wrongfully acquired by Clearspring and Clearspring Flash Cookie Affiliates by means of the wrongful conduct alleged herein; and (vi) ordering an accounting and constructive trust imposed on the data, funds, or other assets obtained by unlawful means as alleged above, to avoid dissipation, fraudulent transfers, and/or concealment of such assets by Clearspring and Clearspring Flash Cookie Affiliates;

4.     Award damages, including statutory damages where applicable, to Plaintiff and Class Members in an amount to be determined at trial;

5.     Award restitution against Defendants for all money to which Plaintiff and the Classes are entitled in equity;

6.     Restrain Defendants, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with them from continued access, collection, and transmission of Plaintiff and Class Members' personal information via preliminary and permanent injunction;

7.     Award Plaintiff and the Class Members:

    a.  their reasonable litigation expenses and attorneys' fees;

    b.  pre- and post-judgment interest, to the extent allowable;

    c.  restitution, disgorgement and/or other equitable relief as the

1                Court deems proper;

2           d.  compensatory damages sustained by Plaintiff and all others

3              similarly situated as a result of Defendants' unlawful acts and

4              conduct;

5           e.  statutory damages, including punitive damages;

6           f.  permanent injunction prohibiting Defendants from engaging

7              in the conduct and practices complained of herein;

8 For such other and further relief as this Court may deem just and proper.

9

10 Respectfully, submitted

11 DATED: September 2, 2010        KAMBERLAW, LLC

12                           KAMBERLAW, LLP

13

14

15 By: Avi Kreitenberg

16 Attorneys for Jennifer Aguirre,

17 individually and on behalf of a class
of similarly situated individuals

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint         29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully, submitted

Respectfully, submitted

DATED: September 2, 2010          KAMBERLAW, LLC

                                  KAMBERLAW, LLP


By: Avi Kreitenberg

Attorneys for Erica Intzekostas,
individually and on behalf of a class
of similarly situated individuals

---

Class Action Complaint                30

Name & Address:
Avi Kreitenberg (SBN 266571)
KamberLaw, LLP
1180 South Beverly Drive, Suite 601
Los Angeles, California 90035

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA INTZEKOSTAS, an individual, on behalf of herself and all others similarly situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>FOX ENTERTAINMENT GROUP, a Delaware Corporation and CLEARSPRING TECHNOLOGIES, INC., a Delaware Corporation,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV10 6586-RSWL(SHx)**<br><br>**SUMMONS** |

TO:   DEFENDANT(S): _____

_____

A lawsuit has been filed against you.

Within **21** days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Avi Kreitenberg_____, whose address is KamberLaw, LLP, 1180 South Beverly Drive, Suite 601, Los Angeles, CA 90035_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___**2 SEP 2010**___                By: _____
                                                    MARION DAVIS
                                                    Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Ronald S. W. Lew and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

## CV10- 6586 RSWL (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
ERICA INTZEKOSTAS, an individual, on behalf of herself and all others similarly situated.

**DEFENDANTS**
FOX ENTERTAINMENT GROUP, a Delaware Corporation and
CLEARSPRING TECHNOLOGIES, INC., a Delaware Corporation

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Avi Kreitenberg, KamberLaw, LLP, 1180 South Beverly Drive, Suite 601, Los Angeles, California 90035

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff      ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes   ☐ No        ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Viol. of: (1) 18 U.S.C. § 1030; (2) CA Pen. Code § 502; (3) CA Pen. Code  § 630; (4) CA Civ. Code § 1750; (5) CA B & P Code § 17200; (6) Trespass to Personal Property

**VII. NATURE OF SUIT** (Place an X in one box only.)        (7) Unjust Enrichment

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | IMMIGRATION | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**   Case Number:   **CV10 6586**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑Yes
If yes, list case number(s): 2:10-cv-05484-GW; 2:10-CV-05948-SVW-AGR

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
    ☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
    ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
    ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Other States: Pennsylvania |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | Other States: Virginia |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | Other States: Pennsylvania |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date September 2, 2010

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |